EGBERT H. DUDLEY et al., Plaintiffs, *v.* EVELINA B. PERKINS, as Executrix, etc., et al., Defendants.

Supreme Court, Steuben County, May 8, 1924.

Trial — new trial — complicated case tried three times before separate juries with verdict for plaintiff on each trial — motion for new trial denied.

A new trial will not be granted in a complicated case which has been tried three times before separate juries with a verdict for the plaintiff on each trial where no substantial error has been committed, although the court may differ with the jury upon some one of the many matters of fact involved.

MOTION for new trial.

*Herbert Hemingway*, for the motion.

*Cole & Knapp* (*James O. Sebring*, of counsel), opposed.

RODENBECK, J. This case has been tried three times and each time the plaintiffs have received a verdict. This triple judgment of separate juries, which under our system of jurisprudence are the arbiters of the complicated facts in the case, ought to indicate where the equities lie. So long as the antiquated provision in the Constitution with reference to jury trials is maintained and complex and intricate questions of fact are submitted to juries, the courts should respect the spirit of the fundamental law and not endeavor to amend it or circumvent it by granting new trials, because the court may disagree with the conclusion of the jury.

The trial court, however, in this instance is in accord with the verdict of the jury which is the best result attainable under our system of jury trials. The Perkins contracts with the growers were doomed to meet with difficulties in execution, if not with failure, at their inception. They assumed a perfection of human nature which does not exist. They undertook to hold the growers of potatoes with a few exceptions to a flat rate for the potatoes grown, without regard to their market value. They involved a gamble as to the price of potatoes when deliveries were to be made. If potatoes dropped below the price named in the contracts Perkins was the loser and if they rose above that figure, the growers were the losers. The contracts assumed that the growers would deliver their potatoes if the price rose above that stated in the contracts, which it did, but results showed that the growers were slow to deliver under these circumstances and that they withheld their potatoes, not giving the notice required by their contracts, until it was too late to deliver under the contracts. Of nearly 500 growers, only two gave the notice of readiness to deliver called for by their contracts and these two notices were late. Efforts were made by Perkins through McGrath to remedy this situation and modifications were made in the Dudley contract. It will constitute a new rule of law in agency if Perkins is not bound by these admissions and by the apparent scope that he held out McGrath as possessing, conceding that he was a special agent. It would operate as a fraud on the Dudleys to so hold under the circumstances after having been led into believing that McGrath was looking after this entire transaction for Perkins. The whole defense is an effort to make the Dudleys bear the responsibility for the failure of the growers faithfully to carry out their contracts and for contingencies which none of the parties could foresee and which were not provided

for in the contracts and to penalize the Dudleys for the breaking down of a scheme that was destined to failure through inherent weakness in the contractual project. If there was laxity in the execution of the entire transaction it was not confined to the Dudleys. It was Perkins' plan and for any failure of the growers to make deliveries and for his method of dealing with the Dudleys through McGrath, the Dudleys should not be made to suffer. The technical attitude of Perkins to hold the Dudleys for the success o' his scheme of furnishing New York city with cheap potatoes a' the expense of the growers of Steuben county in case of a rise in the price of potatoes above that stated in the contracts, is shown by the item in his counterclaim which seeks to charge the Dudleys with a shortage of thirty-two cents on a whole carload of potatoes and to concede the authority of McGrath to modify the Dudley contract in some respects but not in others, while all the time holding him out as possessing that authority.

The verdict of the jury for the plaintiffs, the third one in this case, should be respected, no substantial error having been committed, and the motion for a new trial for that reason is denied.

Ordered accordingly.